WORTH *v.* STEAM-TUG WM. MURTAGH.

*(District Court, E. D. New York.* February 14, 1881.)

1. TOW—WRECKED CANAL-BOAT—SUBSEQUENT LIABILITY OF TUG.

Where a canal-boat in tow of a tug sunk in a channel-way, and was abandoned by the tug, and two days after another vessel ran on the sunken wreck, which was not buoyed, and sustained damage, for which she brought suit against the tug, *held,* that the tug was not liable for such damage, it appearing that the canal-boat had her master on board and in charge at the time of sinking; that the tug did all she could to save her, and was justified in leaving her when she did.

In Admiralty.

*F. A. Wilcox,* for libellant.

*E. D. McCarthy,* for claimant.

BENEDICT, D. J. This is a proceeding *in rem* to enforce a lien against the tug William Murtagh for the amount of the damage caused to the sloop Bolivar for running upon a sunken canal-boat named the Anna Maria, which at the time lay under water near the mouth of Gowanus creek, in the harbor of New York. The evidence shows that the Anna Maria, on the sixth day of April, had been taken in tow by the William Murtagh to be towed from Elizabethport to New York with several other boats. While prosecuting that voyage this boat was found to be sinking. Effort was at once made by the tug to get her into a place of safety, but before she could be got upon the flats she sunk in the channel-way. After the Anna Maria had gone to the bottom the tug proceeded on her voyage with the other boats. On the eighth day of April the sloop Bolivar, while navigating the channel in question, ignorant of the presence of the canal-boat in the channel,—

the same being under water, without a buoy or other means of indicating her presence,—ran upon the wreck and sustained damages, to recover which she brings this action against the tug which had the canal-boat in tow at the time she sank. The evidence shows that the canal-boat had a master on board and in command of her during the voyage described; that when the canal-boat went down the tug left and paid no further attention to her, and that she was afterwards raised by her owners. On the part of the libellant it is contended that the evidence also shows the canal-boat to have been unseaworthy at the time she was taken in tow by the tug; and it is insisted that it was a fault on the part of the tug to attempt to tow such a boat across the harbor of New York; that the sinking of the boat must be attributed to the fault of the tug in attempting to take an unseaworthy boat across the bay, and that consequently the tug became subject to an obligation to remove the wreck, or so buoy it as to notify other vessels navigating the channel of the existence of this hidden danger.

In disposing of this case I assume that the sinking of the boat arose from her unseaworthy condition; and I also assume—without intending so to decide on the present occasion—that it was negligence on the part of the tug to attempt to tow such a boat across the harbor of New York, and that such negligence was one cause of the boat's sinking. I consider the case as turning upon the question, whether, with these assumptions, the tug has been shown to have been under the obligation to remove the wreck, or so buoy it as to give notice of its presence. Upon this question my opinion is adverse to the libellant.

The evidence shows beyond dispute that the canal-boat went down in spite of all reasonable exertions on the part of the tug to get the canal-boat to a place where she could sink and be out of the channel; that after the canal-boat sunk the tug proceeded on her way with the remainder of the tow, without any objection on the part of the master of the canal-boat. The damage sued for occurred on the eighth of April, after all connection between the tug and the canal-boat had

ceased.   At that time, as I conceive the law to be, the tug was under no obligation whatever in respect to the wreck.   In *White* v. *Crisp*, 10 Ex. 312, it was held that in order to make out the existence of an oblightion on the part of a defendant to maintain a buoy upon a wreck, it is not enough to show that the fault of the defendant caused the sinking, but it must also appear that at the time the damage arose the defendant was in possession and control of the wreck, and able to remove or to buoy it.

In this case, sometime prior to the damage in question, all connection between the tug and the canal-boat had been terminated, under circumstances justifying such action on the part of the tug.   Because her connection had been so terminated under such circumstances, I am of the opinion that at the time of the damage to the Bolivar the tug was under no obligation to prevent the canal-boat from being a cause of damage to other vessels navigating the channel wherein she was sunk, and consequently is not liable for the injuries sustained by the Bolivar.   It is said that if such be the rule an inducement is held out to tugs to abandon their tows at the earliest moment, in all cases of disaster, in order to escape further responsibility; but it is not seen that such a consequence will follow from a case like the present, where it is proved that the tug was justified in terminating her connection with the canal-boat, because every reasonable effort had been made on her part to get the canal-boat to a place of safety before she sunk, and no requirement was made by the master of the canal-boat for any further effort in his behalf. The tug, having done all that it was possible for her to do to aid the canal-boat in its distress, had the right to terminate her connection with the canal-boat, there being a master of the canal-boat there present; and, having so terminated her relation with the canal-boat under circumstances justifying such action, all obligation in regard thereto ceased and was at an end.

The libel must therefore be dismissed, and with costs.